number 22-1787. Council? Good afternoon. My name is Dennis McAndrews. I am here on behalf of T.D. and his family as appellants, and I would respectfully request to reserve three minutes for rebuttal. That's granted. Thank you, Your Honor. This is an attorney's fee case, but it is not the Garden Variety attorney's fee case. I respectfully request to reserve three minutes for rebuttal. Thank you, Your Honor. I respectfully submit that simply looking at our briefs, the brief of the amicus that supports our position recognizes that this case is really far more than just a dispute over fees, but it really comes down to the fundamental issue under the special ed law of are we going to have a system that allows for children with disabilities to have reasonable access? Can I ask the clerk to start the time? Okay. Sure. Go ahead. Did I get a few extra there? It's all good. May have to look at the replay and get that. But it is fundamental about giving access to children with disabilities and their families. The lower court decision here, with all due respect to the lower court, is riddled with legal errors. And it's erroneous on so many levels. It's erroneous first by saying that because this case had been decided to be moot, we didn't succeed on the merits. It was moot because we had won five years of tuition, some compensatory education, a statement that the child had been denied a free public education. The district court said, oh, that's incidental. Five years of tuition, that allowed a sexually abused child who had been ignored by the district, where we had won at due process, where we had won before a magistrate, where we had won at the district court, where we had won before the state administrative process, and it was only decided to be moot because while this case was in the federal courts, the school district finally, after we had to go to the state department of education and get an order for them to pay, paid five years of tuition. Every circuit in this country, including this, has said where you win on the merits, which we did over and over and over and over again, and they were the ones that always initiated every single appeal. We're now approaching 10 years on this case that we won every single time, and where you win on the merits, and it's mooted because the relief we want has been granted pursuant to a judgment on the merits, you win, and you're entitled to fees. And we lost almost 60% of our council fees based on that mootness claim, which is, excuse me, assuming we think you're right about this, where do we go from there? If we can look past mootness, and I'm always a little hesitant, but not looking past mootness, I'm looking, I'm saying assuming we think you're right about mootness and who was the successful plaintiff or party in all of this, where do we go? After, well, then the other issues that must be looked at are the degree of success. The court is saying, well, you didn't win everything. But this is. Can I ask you a question? Yes, sir. I want to know about the counterclaims. It seems that they weren't really pursued, and that may have been held against you. What's your position on the counterclaims? They weren't pursued, and it was held against us. I mean, once the district appealed, well, of course, we're going to file a counterclaim to say, well, we could have gotten even more, but this is a common core of facts, absolutely a common core of facts from start to finish. This isn't, you know, an a la carte kind of thing where you're carving up the different claims. This is one set of facts about tuition reimbursement, compensatory education, denial of fate. And, sure, would we have liked to have gotten a little more compensatory education? Sure, but that wasn't the case. This case was about tuition. This case was about getting this sexually abused kid tuition so he could go to another school and heal, which he did after five years, and finally was able to go back to the school district. I mean, and if that's not winning, I don't know what is, Your Honor. And yet, we're in judgment. I'm confused about the compensatory education. There's an argument because you got $1,300 worth versus $138,000 worth that you asked. Does compensatory education depend upon the tuition reimbursement? Is it related to it? It would seem to me maybe if he is in another school, then he doesn't need compensatory education because he's getting the education. How do the two interact? And I'm happy to respond to that, Your Honor, because it can, to those of us who don't do this every day, be a little confusing. The issues began in 2011 when this child was sexually abused. The school district, and I'll try to synthesize this, the school district ignored it, said, Mom, it was difficult, it didn't happen. Finally, after the kid is evaluated again, they recognize, oh, my gosh, this kid was sexually abused, but we still don't think we did anything wrong. And so we go to a hearing. So our position is, is we have to show what happened from 2011 when he was abused until he moved into the private school to show why we were entitled to the private school tuition. That also, though, during that time period while he was still in the district and being ignored, we felt we had a right to compensatory education. That's what I mean by this is a common core of facts. This isn't something where we're trying to get compensatory education for this time and then we go on to a separate factual claim. All of these facts were necessary to prove tuition once he left, but we were saying before he left, he was entitled to compensatory education because they didn't take him seriously enough. We got the tuition and we got a little bit of comp ed, but the tuition drove this bus. Why did you not get more comp ed? Because you got the tuition or because? Probably because his grades were okay. Mom's helping him at home. He's doing okay grade-wise. Grades aren't the only thing. That's why we issued a counterclaim. But, you know, we would have gone home happily after that, except the district appealed. So they appeal. We file a counterclaim and very quickly say we're not going to pursue it. We had a minor settlement with the other side. Let's fight about what the core of this case is, tuition, tuition, tuition. So we win the tuition in front of the magistrate again. We win the tuition in front of the district court again. They don't pay it. We go back for another administrative process to the State Department of Ed that says you not only have to pay the two years you won, you don't have to pay the two years you lost. You now have to pay an additional three years because of pendency because you haven't won and you owe it. And by the way, and this is an important fact in terms of degree of success, this court in M.R. versus Ridley said just getting the pendency, the additional three years makes you prevailing party. In this case, we won every step of the way. In M.R., the kid hadn't actually lost in front of the district court, but because of pendency. The school district has to continue to pay the tuition while the federal court action, even on appeal, is going on, the child and the family was entitled to council fees. So we're entitled to fees on so many levels, and then we get knocked down by an enormous amount, including 100% on filing the fee petitions. We had to file two long briefs, four briefs, two motions, 30 exhibits, and then we had to pay the tuition. We had to file two long briefs, four motions, 30 exhibits, 10 affidavits, and said, well, I don't think you should get anything. Zero. I mean, there is simply no legal basis for it. In fact, the district court said, well, there is no deliberate indifference, but found him disabled and found the IDA had been violated. But I didn't see that acknowledged in the district court's success analysis, if you will. I agree. You know, the deliberate indifference, again, was the tail wagging the dog. This case was about tuition, and we don't have to prove deliberate indifference to get tuition. Frankly, the district court erroneously, and I'm trying to pick my battles here, the district court erroneously said you had to prove deliberate indifference to get tuition reimbursement under Section 504, completely contrary to the decisions of this court. So what are we going to do? He issued the opinion, so we're going to cross appeal on it. Before we get to the attorney's fees calculation, what is it you want us to find? Do you want to remand the district court? No. In all candor, Your Honor, it took Judge Mariani two and a half years to decide this fee petition, and then it was decided with terrible errors of law. I mean, errors of law that are fundamental. This is 10 years old, Your Honor. We're asking, I think, one of two things. Either this court decide it. The record is there. The record is there. I think this court can decide it. Or in the alternative, appoint a special master. You have that authority under the rules of appellate procedure. I would be thrilled to go in front of a special master, because we have plenty of evidence to show that these fees have been paid hundreds of times. And are now being paid to other attorneys across the Middle District. I would love to go to a special master. There was evidence that was in the amicus briefs about rates and hours worked and so forth. Was any of this presented to the district court? Yes, yes, yes. My affidavit and the affidavits of... There is a lot of additional information in the amicus briefs that did not appear to be part of the presentation to the district court, or am I wrong about that? With all due respect, Judge Strick, I'd have to really drill down on that amicus brief. I didn't think that was the case, but I would stand corrected, and I'm sorry. I mean, what I would invite the court to do, and I say this with all due respect, and I know you'll review the record, but compare the affidavits that I have filed, that the plaintiff has filed, the child has filed, with the affidavits that were filed by the school district. The school district affidavits were three pages. Both affidavits were just the attorneys for the school district. And that issue of rates, Judge Sciarica, nowhere in the school district papers, in the district court opinion, has one other attorney been identified who handles these cases in the middle district. This court in... We all know what it is. Interfaith. In the interfaith communities case said if there's inadequate number of attorneys who have the skill to do it, or inadequate who are willing to do it in a district, you look to a broader area. We have both. There's now one other attorney that was identified. There's one other attorney I know of in the middle district that will do it, and he signed an affidavit for us. One other attorney in the entire middle district that will do it. We don't have an affidavit that says no one else is going to do it. We do have affidavits from other lawyers, but there's disputes among the affidavits. I mean, this is a classic situation where the district court should have held a hearing. I mean, I know you want to appoint a special master, but, you know, what we really need to do is send this back and say, under Smith and Planned Parenthood, the district court has to have a hearing to sort through this issue. Affidavits can't... We can't decide. We can't credit one affidavit over another on appeal. So, you know, isn't that really the proper thing to do to remand it for that hearing? And I know it's, you know, it's late in the day, but... It's nighttime, Your Honor. It's nighttime. I mean, we're approaching 10 years on this case, and... Is there another situation... One of the amicus cites a statute where there's a prohibition against reducing fees when the other party has protracted the litigation. I mean, is that an avenue for you to complain to the district court that maybe that statute should be used here to punish the school district if you contend that it's been... They've been protracting it in a way that's been unfair? It's an avenue for me to ask this court to grant full fees. I mean, I think this court has the authority to look at this case, to look at the competing affidavits, to recognize the legal errors, and grant full fees. To be sure, Judge Rendell, in a typical situation, I would stand here and say, yes, remand. And in fact, it's reversible per se under the Planned Parenthood case that you were on the panel 20 years ago. Judge Rendell did not have a hearing where these, where the fee rates are in dispute. 2002, Planned Parenthood said, reversible per se if you don't have a hearing. Didn't have a hearing, and brought up mootness sua sponte. We never had a chance even to talk about it. To give them all 11 circuit decisions and the District of Columbia circuit decision. So, I mean, our rates are paid hundreds of times. They are paid in the middle district. And all of that was ignored. All of it was ignored. Thank you, counsel. We'll hear from your adversary. Okay. Good afternoon, your honors, and may it please the court. My name is Alyssa Hicks, and along with my co-counsel, John Freund, we represent the Pocono Mountain School District. The case before the court is about reasonable and fair attorney's fees. The school district is here before your honors to argue that the district court did not abuse its discretion when it reduced appellant's fee award for two reasons. First, appellants achieved limited success throughout the life of the litigation, and second, appellants failed to establish the rates requested as prevailing market rates for the middle district of Pennsylvania. The school district would like to first note that prevailing party fees and special education litigation have effectively swallowed the system. The financial ramifications to a school district for even the smallest of losses is substantial. But because of the recognized windfall in cases like this, the courts have the discretion to reduce the fee awards so that they are reasonable. This court in Institutionalized Juveniles v. the Secretary of Public Welfare stated, because Congress has authorized only an award of reasonable fees, reduction of the load start in cases of only partial or limited success is necessary to ensure that a party is not liable for excessive attorney's fees. Counselor, how is this success limited? The whole argument is over whether there was a violation of the IDEA. Here, the disabled was given five years of tuition by the district court. How is the success limited? The success is limited here, Your Honor, because at the due process hearing, appellants were seeking 1,800 hours of compensatory education, which is valued at a minimum $99,000. They received 26 hours, which is valued at less than $2,000. So we have other cases that were before this court that actually implicate the same counsel, including AB v. Pleasant Valley School District, where the appellants there were seeking around 1,900 hours of comp ed and were awarded 555 hours. But the whole idea of the compensatory education was because maybe he had to get his grades up. But as you argued, actually that was the main argument against his disability, his grades were fine. It was kind of predestined that he wasn't going to get a lot of compensatory education by virtue of your own argument. Why isn't it, as your opponent would say, that this case really, this is about tuition reimbursement. This is about his being in a school where he's out of the situation that caused the problem and they want reimbursement for it. Why is that not really the thrust of this case? Well, Your Honor, the facts of the due process hearing and whether or not the student received a FAPE are one thing. Here what this court is looking at is the fee requested and the fee actually awarded by the court. So I understand that counsel wants to frame this as being a strictly tuition reimbursement case, but they sought full day awards at every level. Although the school district did initiate the appeals to the district court in the third circuit, they continued to seek full day awards. So the school district respectfully disagrees with counsel that this is only a tuition reimbursement case. So you're saying what the district court did in reducing the award from $616,000 to $127,000 for five years, when your client actually caused a lot of those five-year delay, that that's entirely reasonable. Is that correct? Well, Your Honor, I want to address a question you posed with counsel that the school district did not agree with. And the school district protracted litigation here. I think it's important to note that the school district at the due process level was arguing that the student did not qualify for services under any federal law. The hearing officer concluded that he did qualify for services under 504. We fundamentally disagreed with that, so we appealed that to the district court. The district court then found that the student qualified under the IDEA, which is an even stricter classification. There are more services that are afforded to children who receive services under the IDEA versus 504. So it is the school district's position that all of those appeals were warranted, because it wasn't just a matter of how much comp ed was awarded. It was a matter of what federal statute he qualified for services. But you were going to have to pay under state put in any event, weren't you? I mean, was the exposure that much greater than you were already exposed to? Well, Your Honor, yes. It ended up that the school district paid an additional three years under the IDEA state put provision. The school district disputes that those additional three years contribute to the overall success of the litigation here. We don't dispute that it makes them a prevailing party, but we do dispute that that increases their success. And it's important to note that this court in AB versus Pleasant Valley School District, a very similar set of circumstances where it was the 1,900 hours of comp ed that they sought. They only got 550 hours, which is about 25 percent of the relief requested. And the late Judge Caputo in that case opined that because of a significant differential between the relief requested and the relief received, a 45 percent reduction was warranted. Here, the compensatory education is less than two percent of the relief requested. Were they seeking tuition reimbursement in that case? No, Your Honor, that was strictly a compensatory education case. However, I think these are two separate awards here. And if you would like, we could look at the comp ed plus the tuition reimbursement. So if we look at that, if we have 26 hours of comp ed plus two years of tuition, that equals around $17,000. The demand here was at a minimum $115,000. So what was awarded is 15 percent of what they requested. Can we move on to mootness? Yes, Your Honor. You didn't spend a lot of ink in your brief on this. And, you know, considering some of our language in institutionalized juveniles, suggesting that mootness due to extrajudicial relief doesn't alter prevailing party status, the district court instead relied on John T. versus Delaware County. How do you justify that ruling? So the district court, you know, the school district recognizes that Judge Mariani mentioned the fact that this court vacated several issues due to mootness. It is our position that the district court has the discretion to review the life of the litigation. And admittedly, it's difficult to determine how much of a factor the mootness played in the overall fee reduction. But don't we have to send it back to have him tell us? No, Your Honor, I do not think we do. I really think that portion, when you were talking about those two cases, I believe it's John T. in another case. It's institutionalized juveniles. Yes, that part of it, it's on page 40 of his opinion. I believe it's a one-sentence dicta, honestly, in the opinion where he cites that. And I really think that even if this court determined that he should not have done it, that it has a negligible effect on the overall outcome. And that is because Judge Mariani also considered the Comp Ed award and the significant disparity. If you look at pages 37 through 38 of his opinion, it specifically talks about that Comp Ed demand. He had to gut the entire success on tuition because that's what he said he couldn't consider because the tuition had been paid. He gutted that whole success. How can you say that this doesn't go back with us saying, listen, you can't gut the tuition reimbursement when you're considering success? Don't we have to say that to him and have him go, oh, okay, well then I better consider that? Your Honor, I believe that, I understand what you're saying. However, when we really look at this as a whole, again, the school district truly believes that this has a negligible effect. Because when we even consider the tuition reimbursement with the Comp Ed, the relief requested is still less than 25% the relief awarded. And we have case law, we have this court upholding MR versus Ridley School District on very similar circumstances. It was the same situation where they received that 25, it was less than 25% of what they were asking for. So the school district's position is that there is that limited success and the 60% can be supported by the record and by what was actually awarded here. But doesn't degree of success, I mean, you're saying depending upon what you're asking for. Well, then maybe people shouldn't ask for something that they think they're, you know, perhaps not going to get. Because here, since his grades were good, he probably wasn't going to get compensatory education. But doesn't degree of success consider what you're trying to do under the IDEA? And the fact that full tuition reimbursement is the be-all and the end-all. I mean, cases we see, and when I was on the district court, if they got full tuition reimbursement, you know, they're jumping up and down. That's what it's all about. Isn't that degree of success, like what you can get under the statute, isn't that, you know, pretty significant also? Your Honor, when the district court reviews these cases and determining whether they need to reduce the load star, they have to look at everything. They do not get to pick which part of the success contributes to the overall degree of success. So, you know, I agree with you that tuition reimbursement can be substantial. But let it be known that tuition reimbursement here, a year of tuition, was $8,000. And I understand that. But the case law, this court's jurisprudence all supports that. The circuit courts or whoever it may be looks at the litigation as a whole and looks at all of the relief. Well, to be clear, didn't the institutionalized individuals case, didn't we say look more to the relief actually obtained rather than the theories, right? Yes, exactly, Your Honor. And that's what I'm asking you to do here today. I'm not even considering the fact that counsel on their appeal attached other causes of action. I'm looking at solely the due process appeal. And through the course of the litigation, they continued to ask for the two years. They wanted that award and they did not get it. With respect to our second issue regarding the present prevailing market rates, I just want to highlight the fact that appellant's counsel here has previously requested substantially similar, if not the same rates in the middle districts in 2020 and in 2021. And those requests were flawed for the same reasons they are today. First, appellants cite to the community legal services rate schedule, which has been expressly rejected by the middle district. Second, appellants use their own affidavits, which are inherently self-serving and can't be relied upon on their own. And lastly, appellants use affidavits from other local attorneys, none of which state actual rates. All four attorneys state that the rates proposed are reasonable. And this court in AB specifically stated reasonableness is not the standard. So for those reasons, the district court did not err when it set the rates to ensure they represented prevailing. How do you reconcile your adversary's argument about, hey, we're the only game in town and that should be considered more strongly? Well, Your Honor, with respect to the special counsel, the special expertise. And amicus said the same, but. I submit to you that as a practicing special education attorney that I do know of other attorneys in the area. But I also think it's important to note that they that their law firm maintains a local presence in northeastern Pennsylvania. And they admit that in their own filing. So so I don't think that that exception is applicable here as as they are based in this area. One lawyer there, if I'm not mistaken. Last year, I didn't have to go back for a hearing. Counsel, you know, I mean, the district court adopted the fee numbers from a B. Doesn't district court really have to listen to counsel, find out what is especially how big is this family and figure these things out? I mean, we said that if there is some dispute, there needs to be a hearing. Why? Why isn't that the case? Why shouldn't we send it back for a hearing? I don't think it needs to be sent back, Your Honor, because there are many cases that reviewed the exact type of evidence that counsel presented here before. That was in Shanty versus Carbondale Area School District. That's another middle district case. As we said, there's a B versus Pleasant Valley School District. This court did not insist on a hearing in that case. It agreed that the evidence substantiating was not sufficient. I see that I'm out of time, but they had a hearing in a B. It was a hearing. Yes, Your Honor. And that's my point. The evidence is the same. They purported the same support for their fees at a hearing. And the solution was exactly what we're asking for this court today. I believe Judge Sirica has a question. The material that was in the amicus briefs on rates and other matters dealing with the award of attorney's fees. Was that presented to the district court in this particular in the last go around? I'm not sure if it was, Your Honor. I do know the amicus briefs were prepared specifically for this appeal. So I'm not sure if that information was shared at that level. I'm wondering about the propriety of us making rulings on the basis of matters that weren't presented to the district court. Well, quite frankly, Your Honor, I think aside from the amicus briefs, there is sufficient evidence to substantiate what we are purporting the fair and prevailing market rate for fees are here. Can I ask you about the denial of fees for working on the fee applications? What's the support for the district court to take that kind of action? Well, Your Honor, with respect to the denial of the fee application, the. Doesn't that usually go with the same analysis? You know, looking at prevailing in all right. The district court there, he looked at other cases, Young versus Smith and Clemens, and said that when a fee award is outrageously excessive, that a full denial is warranted. And the district court here specifically cited to the fact that counsel spent 171 hours to draft a fee petition and determined that that was outrageously excessive. OK, thank you. All right. Thank you, Your Honors. Thank you, Your Honor. Judge Sierka, with regard to your question about the information in the amicus brief. First, my affidavit, I think, is very explicit about the lack of attorneys in the middle district. So where they are talking about that lack of attorneys, I think my affidavit is quite clear about that. And my affidavit not only goes through the paucity, nonexistence, with one exception, of other attorneys in the middle district, and certainly none with our capacity and the fact we do it where we advance costs, all of that. So my affidavit does that. They go through some others on publicly available websites, including the Office of Dispute Resolution, which is a public government website where it talks about Pocono Mountain has had 15 due process hearings, which is a lot, since 2010. But these appear to be contested, and isn't a hearing the right way to deal with this? Well, I haven't seen any contest. I haven't seen anything. I haven't heard anything in the papers that contest it. And that's part of the problem here, too. The trial court is only supposed to have looked at what was contested in their affidavits vis-à-vis what we had presented. The only thing they contested was our hourly rate. And sure, there should have been a hearing on that. Right now, we're four calendar years past when we filed our fee motion. Under Lonnie, we're supposed to be getting paid 2023 rates. I mean, with all due respect, this has gotten crazy. And, you know, here I stand, you know, dealing with a district court decision that misapplies mootness, that misapplies the law with regarding getting fees to file a fee petition, misapplies the laws with regard to paucity of lawyers and willingness of lawyers. We haven't heard a name yet of anybody else who would handle these cases like we do. And we're going to send it back with all due respect. And, hey, that's what happens. I know that that's what typically happens. But, boy, here we go again. And that's why we asked for a special master. And, frankly, the parties can be charged for the special master. We're very willing to pay our share for a special master to hear this case to get it done. And I would only respectfully request that if this court does what I understand courts often do is remand, that there be instructions, very clear instructions, with regard to degree of success, under get rid of mootness that we want on pendency, and with regard to a proper application of the law with regard to hourly fees, based upon the lack of attorneys that will handle this, and that there be instructions to decide it within 60 days. Otherwise, we're going to be back here in two and a half years. And I hate to say it, Your Honor, but that's what we've seen. And, you know, I'm being honest. I don't mean to castigate, you know, anyone or anything, but I'm trying to be honest and trying to be forthright. Thank you, counsel. Thank you.